IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CESAR PUENTE and MARGARITA PUENTE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:11-CV-2509-N |
| CITIMORTGAGE, INC., | § § § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant CitiMortgage, Inc.'s ("Citi") motion to dismiss [5]. Because Plaintiffs Cesar Puente and Margarita Puente fail to state a claim on which the Court can grant relief, the Court grants Citi's motion.

## I. ORIGINS OF THE MOTION TO DISMISS

This case concerns real property and a related mortgage.[1] On or about February 6, 2006, Plaintiffs executed a first-lien promissory note to obtain a loan from Everett Financial, Inc. d/b/a Supreme Lending ("Everett") in the amount of $125,234.00. Pls.' Original Pet. 2 [1-4]. To secure payment of the note, Plaintiffs executed a first-lien deed of trust, which identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee and beneficiary. *Id.* at 3; *see* Def.'s App. Supp. Def.'s Mot. Dismiss, Deed of Trust, pp. 5-6 [6] [hereinafter Deed of Trust]. Sometime later, Citi claimed to be the owner and holder of the note and deed of trust, or at least the entity entitled to collect the note and enforce the deed,

---

[1]The Court bases this discussion on the allegations in Plaintiffs' petition.

ORDER – PAGE 1

pursuant to assignments from Everett and MERS. *See* Pls.' Original Pet. 3. On August 2, 2011, Citi, acting through a purported substitute trustee, allegedly conducted a nonjudicial foreclosure sale of the property. A substitute trustee's deed purported to convey the property to Citi following the foreclosure. *Id.*

Plaintiffs subsequently brought suit in state court, alleging that Citi did not have standing or the legal right to declare the note in default, accelerate the maturity of the note, appoint a substitute trustee under the deed of trust, or request that the substitute trustee conduct a nonjudicial foreclosure sale because Citi neither owned the note and deed nor was authorized or entitled to collect on the note or enforce the deed. *Id.* In support of this contention, Plaintiffs aver first that the assignment of the note and deed from Everett and MERS to Citi was invalid because the instruments were not "lawfully and timely indorsed, transferred, and assigned."[2] They also allege that, after they made the note and executed the deed, the note and deed were split and separated, with Everett holding the note and MERS holding the deed. *See id.* Because of this split, they allege, the note became unsecured and MERS – or Citi – could not experience a default, forfeiting the security interest as the party holding the deed. *Id.*

Based on these allegations, Plaintiffs request (1) a determination that they have superior title to the property under their trespass to try title and quiet title claims; (2) that the

---

[2]Notably, Plaintiffs do not allege that Everett or MERS never attempted to assign the note and deed to Citi or that Citi was a party unknown to them at the time it sought to foreclose. Rather, the Court reads Plaintiffs' petition as alleging only that Citi did not have standing to foreclose because of defects with the assignments and transfers of the note and deed.

Court set aside the foreclosure and cancel the foreclosure sale deed; (3) declaratory relief; and (4) injunctive relief preventing eviction, but only if the state court handling the eviction fails to abate Citi's forcible detainer proceedings.[3]  *Id.* at 4-8.  Plaintiffs also claim that Citi violated the Texas Debt Collection Practices Act ("TDCPA"), TEX. FIN. CODE § 392.001, *et seq.  Id.* at 6.

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," – *i.e.*, "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (internal citations omitted).

As the Supreme Court has observed:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a

---

[3]Citi has filed a forcible detainer action in the Justice Court of Dallas County, Texas, seeking to evict Plaintiffs and any other tenants from the property at issue. *See* Pls.' Original Pet. 3; Def.'s Notice of Related Case 1 [3].

> complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion then, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is

ORDER – PAGE 4

attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"[4] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS CITI'S MOTION

#### A. Plaintiffs Fail to State a Trespass to Try Title Claim or Quiet Title Claim[5]

Plaintiffs claim that they "are and remain the legal and equitable owners of the Property . . . [and] the purported non-judicial foreclosure sale . . . and the Substitute Trustee's Deed . . . interfere with Plaintiffs' legal and equitable ownership . . . ." Pls.' Original Pet. 4.

---

[4]In this case, that includes the note and deed of trust. *See* Def.'s App. Supp. Def.'s Mot. Dismiss, Note, pp. 3-4 [6] [hereinafter Note]; Deed of Trust, pp. 5-16.

[5]Though Plaintiffs request that the Court set aside the foreclosure sale and cancel the substitute trustee's deed to Citi under a separate heading from their trespass to try title and quiet title claims, *see* Pl.'s Original Pet. 4-5, the remedy they seek is dependent on their trespass to try title and quiet title claims. Accordingly, the Court does not consider it as a separate cause of action.

A trespass to try title suit "is a procedure by which rival claims to title or right of possession may be adjudicated." *Eskridge v. Fed. Home Loan Mortg. Corp.*, 2011 WL 2163989, at *4 (W.D. Tex. 2011) (quoting *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983)). "The statute is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citations omitted).[6] Relatedly, a suit to quiet title is an "equitable action that clears a valid title against a defendant's invalid claim to the property." *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510, at *2 (N.D. Tex. 2012) (Boyle, J.) (citations omitted). "The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied) (quotation omitted). The purpose of such a suit is to "enable the holder of the feeblest equity right to remove from his way to legal title any unlawful hindreance," including "any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof." *Id.*[7]

---

[6] In Texas, trespass to try title suits have "strict . . . proof requirements." *Martin v. Amerman*, 133 S.W.3d at 265. To prevail on a trespass to try title claim, a plaintiff must rely on the strength of his own title, not the weaknesses of the defendant's title and "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Id.* (citing *Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981)).

[7] The claimant "must show an interest of some kind, but it is error that the claimant must show fee simple or an uncontestable interest to prevail." *Katz v. Rodriguez*, 563 S.W.2d 627, 630 (Tex. App. – Corpus Christi 1977, writ ref'd n.r.e.) (citations omitted). Rather, "the plaintiff in a suit to quiet title must allege right, title, or ownership in himself or

ORDER – PAGE 6

Plaintiffs allege that they "are, have always been, and remain the lawful owner[s] of the Property," and that the substitute trustee's deed to Citi "asserted an interest in and to the Property which [Citi] or its Substitute Trustee could not lawfully convey, and [Citi] could not and did not lawfully acquire." Pls.' Original Pet. 4. Plaintiffs base their claims for trespass to try title on their theory that the note and deed became invalid when they were "split" and on their contention that the assignments of the deed of trust and note between Everett, MERS, and Citi were invalid. The Court thus analyzes these two theories to ascertain whether Plaintiffs have stated causes of action for trespass to try title and quiet title.

***1. The Alleged "Split" of the Note and Deed Do Not Extinguish Foreclosure Rights Under the Deed.*** – Plaintiffs challenge Citi's standing to foreclose and therefore their title in the property as conveyed by the foreclosure deed because the note and deed were "split," with Everett holding the note and MERS holding the deed. Pls.' Original Pet. 3. Courts in this Circuit have resoundingly rejected allegations that foreclosure under a deed is invalid because the note and deed were split between a lender and MERS. *See Swim v. Bank of Am.*, *N.A.*, 2012 WL 170758, at *3 (N.D. Tex. 2012) (Lynn, J.) (collecting cases). "MERS, as a book entry system, qualifies as a mortgagee under the Texas Property Code." *James*, 2012 WL 778510, at *3 (citing TEX. PROP. CODE § 51.0001(4)).[8] This means that, where

---

herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 579 (citation omitted). And, like a trespass to try title action, a "claimant must base his action on the strength of his own title." *Katz*, 563 S.W.2d at 629 (citing *Humble Oil & Ref. Co. v. Sun Oil Co.*, 191 F.2d 705 (5th Cir. 1951)).

> [8]The Western District of Texas has explained MERS' role with regard to mortgages:
> [T]he role of MERS has been the subject of federal multidistrict litigation in

ORDER – PAGE 7

"mortgage documents provide for the use of MERS[,] . . . the provisions are enforceable to the extent provided by the terms of the documents" – i.e., the language in the deed of trust controls. *Richardson*, 2010 WL 4818556, at *5; *see also, e.g.*,*Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *5 (N.D. Tex. 2012) (Boyle, J.); *Swim*, 2012 WL 170758, at *3; *DeFranceschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *4 (N.D. Tex. 2011) (Means, J.).  It thus follows that (1) "[i]n cases where 'MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by express language in the Deed of Trust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage,'" *James*, 2012 WL 778510, at *3 (quoting *Eskridge*, 2011 WL 2163989, at *5); *see also, e.g.*, *Swim*, 2012 WL 170758, at *3 ("Under the express language of the New Deed of Trust, MERS is a beneficiary and nominee for both the originating lender and its successors and assigns, creating authority for a party holding only a deed of trust, and not the underlying obligation, to foreclose."),[9] and (2) "[u]nder

---

> *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659 F. Supp. 2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009).  The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. *Id.* at 1370. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. *Id.* at 1370 n. 6. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which means a "national book system for registering a beneficial interest in security instrument and its successors and assigns."

*Richardson v. CitiMortg., Inc.*, 2010 WL 4818556, at *5 (E.D. Tex. 2010).

[9]Moreover, "[t]here is substantial authority for the principle that, just as a transfer of promissory note operates to transfer the associated deed of trust, a transfer of the deed of trust likewise transfers the note." *Kramer v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 3027990, at *5 (W.D. Tex. 2012) (citing cases).

ORDER – PAGE 8

Texas law, where a deed of trust . . . expressly provides for MERS to have the power of sale, then MERS has the power of sale," *Richardson*, 2010 WL 4818556, at *5 (citing *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App. – Eastland 2010, pet. denied)).[10]

---

[10] In their response, Plaintiffs argue that Citi is "seeking to enforce the Note made payable to [Everett] by declaring a default under the terms of the Note, accelerating the maturity of the Note, appointing a Substitute Trustee under the Deed of Trust securing the Note, and then requesting the Substitute Trustee to conduct a nonjudicial foreclosure sale under the Deed of Trust securing the note." Pls.' Resp. 9 [8]. Plaintiffs cite *Blankenship v. Robins*, 899 S.W.2d 236 (Tex. App. – Hous. [14th Dist.] 1994, no writ), and *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520 (Tex. App. – Dallas 1994, no writ), for the proposition that to collect on a note, the holder must establish that it is the legal owner and holder of the note. *See also Leavings v. Mills*, 175 S.W.3d 301 (Tex. App. – Hous. [1st Dist.] 2004, no pet.). But *Blankenship* and *Bean* are distinguishable because they concern collections under a promissory note and do not address mortgages secured by deeds of trust granting foreclosure rights. *See, e.g., Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469-70 (W.D. Tex. 2011) (distinguishing *Leavings* and explaining foreclosure procedure under Texas property law). Cases in this District have repeatedly rejected the contention that a mortgagee "must prove it either owns or holds the note prior to instituting foreclosure," known as "the 'show-me-the-note' theory." *Plummer v. CitiMortg.*, 2012 WL 1438211, at *5 (N.D. Tex. 2012) (McBryde, J.) (collecting cases); *see also, e.g.*, *Wells v. BAC Home Loans Servicing, L.P.*, 2011 WL 2163987, at *2-3 (W.D. Tex. 2011). The Western District of Texas has explained:

> Texas law differentiates between enforcement of a promissory note and foreclosure. Foreclosure enforces the deed of trust, not the underlying note. *See Slaughter v. Qualls*, 139 Tex. 340, 346, 162 S.W.2d 671, 675 (1942) (stating that the trustee derives its authority to sell solely from the deed of trust); *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App. – Corpus Christi 2002, pet. denied). It is an independent action against the collateral and may be conducted without judicial supervision. *See* TEX. PROP. CODE ANN. § 51.002 (West Supp. 2007); *Tierra Sol Joint Venture v. City of El Paso*, 311 S.W.3d 492, 499 (Tex. App. – El Paso 2009, pet. denied) (nothing that foreclosure is an in rem proceeding). Enforcement of the promissory note, on the other hand, is a personal action against the signatory and requires a judicial proceeding. *See* TEX. BUS. & COM. CODE § 3.401(a); *TrueStar Petroleum Corp. v. Eagle Oil & Gas Corp.*, 323 S.W.3d 316, 319 (Tex. App. – Dallas 2010, no pet.). Furthermore, Texas courts have refused to conflate foreclosure with enforcement of a promissory note. They have stated, "Where there is a debt secured by a note, which is, in turn, secured by a lien, the lien and the note constitute *separate obligations*." *Aguero*, 70 S.W.3d at 374 (emphasis

Here, the deed of trust provides that MERS is the nominee and beneficiary for "Lender and Lender's successors and assigns." Deed of Trust, pp. 5-6. And "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." *Id.* at 7. Accordingly, the fact that the note and deed may have been "split" does not affect either MERS' right to foreclose under the deed or MERS' right to assign its rights to Citi under the deed. As this Court explained in *James* – a case with a strikingly similar pleading to Plaintiffs' petition:[11]

> MERS may . . . have the authority to transfer the documents in the Deed of Trust . . . where MERS is a beneficiary and nominee for both the original lender and its successors and assigns by express language in the Deed of Trust[, falling into the exception where a party holding only the deed can foreclose, as explained in *Eskridge*] . . . .

---

added). The right to recover on the note and the right to foreclose are severable and may be enforced separately. *See Carter v. Gray*, 125 Tex. 219, 221, 81 S.W. 647, 648 (1935).

*Wells*, 2011 WL 2163987, at *2-3; *see also, e.g.*, *Kramer*, 2012 WL 3027990, at *6; *Torello v. MERS*, 2012 WL 1888134, at *3 (N.D. Tex. 2012) (Fish, J.); *Mahlin v. U.S. Bank Nat'l Ass'n*, 2012 WL 2193666, at *4 (N.D. Tex. 2012) (Kaplan, Mag. J.); *DeFranceschi*, 2011 WL 3875338, at *4. Accordingly, Citi need not prove ownership of the note, or "show Plaintiffs the note," to nonjudicially foreclose where the deed of trust grants the power to foreclose. *But see Martin v. New Century Mortg. Co.*, 2012 WL 2529251, at* 4-5 (Tex. App. – Hous. [1st Dist.] 2012, no pet. h.) (granting summary judgment to defendants where plaintiffs challenged defendants' standing to foreclose by relying on principles of collection under a note – or Texas commercial paper principles – explaining difference between "holder" of note and "owner" of note and rights under each, and citing inter alia *Leavings*, 175 S.W.3d at 309); *cf. Edwards v. Ocwen Loan Servicing, LLC*, 2012 WL 844396, at *5 (E.D. Tex. 2012) (holding that mortgagor did not have standing to challenge assignment, but explaining that defendants' uncontroverted summary judgment evidence established defendants' ability to assert claim under note).

[11]Indeed, in *James*, 2012 WL 778510, the counsel on both sides were the same counsel involved in this case.

ORDER – PAGE 10

2012 WL 778510, at *3 (citing *Eskridge*, 2011 WL 2163989, at *5); *cf. Olaoye v. Wells Fargo Bank, NA*, 2012 WL 1082307, at *1-3 & n.3 (N.D. Tex. 2012) (Means, J.) (dismissing identical argument in substantially similar petition by same law firm on different ground inapplicable here, but noting that, "even assuming that the note and deed of trust had been split and that Wells Fargo lacked possession of the note [at the time of foreclosure], this would not necessarily mean that Wells Fargo lacked the authority to enforce the deed of trust and foreclose on the property" and citing cases). Thus, it matters not that Everett originally held the note and MERS the deed of trust in this case.

*2. Plaintiffs Fail to Plead Sufficient Facts to Support Their "Invalid Assignment" Theory.* – Plaintiffs plead that the note and deed "were not lawfully and timely indorsed, transferred, and assigned to [Citi] . . . and that [Citi] was [therefore] not authorized or entitled to collect on the Note and enforce the Deed of Trust." Pl.'s Original Pet., p. 3.

At the outset, the Court notes that it need only consider MERS'[12] assignment of the deed of trust because it is that document which governs MERS' or Citi's right to foreclose, as the Court explains in Part III.A.1 and note 9, above. *See* Deed of Trust, p. 7 ("MERS

---

[12]In the "facts" section of Plaintiffs' complaint, it is clear that they allege Everett attempted to assign the note to Citi. Pls.' Original Pet. 2-3. However, Plaintiffs do not specify which party assigned the deed. The Court notes that Plaintiffs refer to Everett assigning the deed under their request for declaratory judgment. *Id.* at 5. However, "MERS, as a book-entry system, qualifies as a mortgagee under the Texas Property Code." *James*, 2012 WL 778510, at *3 (citing TEX. PROP. CODE § 51.0001(4)). And MERS "ha[s] the authority to transfer the rights and interests in the Deed of Trust to [Citi]," *Richardson*, 2010 WL 4818556, at *5, including the power of sale where the deed grants MERS the power of sale, *id.* at *5, as the deed does here, *see* Deed of Trust, p. 7. The Court explains this concept in Part III.A.1, above. Accordingly, the Court will refer to MERS as the purported assignors of the deed.

ORDER – PAGE 11

. . . has the right to . . . foreclose and sell the Property . . . ."); *see also, e.g.*, *Hazzard v. Bank of Am., NA*, 2012 WL 2339313, at *3 (S.D. Tex. 2012) ("More succinctly, a qualified mortgagee is not required to also own or hold the note that is associated with a deed of trust in order to properly foreclose the lien." (citing *Kan*, 823 F. Supp. 2d at 469-70)). Regarding the validity of MERS' assignment of the deed then,[13] Citi argues that Plaintiffs lack standing to "assert any complaints regarding any assignments of the . . . Deed of Trust from the original lender to [Citi]." Def. Citi's Mot. Dismiss 5. Indeed, "[n]umerous district courts in Texas have so held." *Kramer*, 2012 WL 3027990, at *4 (collecting cases); *see also, e.g.*, *Hazzard*, 2012 WL 2339313, at *3; *Woods*, 2012 WL 1344343, at *5; *Edwards*, 2012 WL 844396, at *5 (noting that plaintiffs did not have standing to challenge assignments, but finding that summary judgment evidence established valid assignments regardless); *DeFranceschi*, 2011 WL 3875338, at *5 (same); *McAllister v. BAC Home Loans Servicing, LP*, 2011 WL 2200672, at *5 (E.D. Tex. 2011); *Eskridge*, 2011 WL 2163989, at *5.

However,

> a careful review of Texas law persuades this Court that it is not completely accurate to say that one can never challenge assignments to which one is not a party. The primary exception to this general rule is where an assignee of a claim sues the obligor for performance: under those circumstances,
>> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the

---

[13]In their response, Plaintiffs explain that sections 3.201, 3.203, and 2.304 of the Texas Uniform Commercial Code govern negotiation of the note as a negotiable instrument, Pls.' Resp. 7, thus clarifying their unlawful and untimely indorsement, transfer, and assignment allegations with regard to the note, *see* Pls.' Original Pet. 3. However, it is unclear what defects Plaintiffs allege regarding assignment of the deed, which is instead a contract, as they only plead that the deed "w[as] not lawfully and timely . . . assigned." Pls.' Original Pet. 3.

ORDER – PAGE 12

>assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

*Kramer*, 2012 WL 3027990, at *4-5 (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. – Hous. [1st Dist.] 1975, no writ)); *cf. Commonwealth Prop. Advocates, LLC v. MERS, Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2012) (explaining that plaintiff has prudential standing where he does not assert any contractual rights regarding an allegedly invalid assignment to which he is not a party but, rather, alleges that defendants have no legal or contractual authority to foreclose, and, as the current owner of property at issue, foreclosure would injure plaintiff directly).

It is unclear from Plaintiffs' complaint whether they allege (1) that the assignment of the deed between MERS and Citi is *voidable* because, for example, either the procedures MERS and Citi employed were faulty, or (2) that the assignment was *void* and therefore invalid, meaning Citi did not have the authority to foreclose under the deed at all.[14] If the assignment were merely voidable, Citi is correct that Plaintiffs have failed to state a claim because Plaintiffs have no standing to challenge the assignment, and the various parties who have legitimate claim to property pursuant to the foreclosure must resolve their own claims against each other (meaning that Everett, MERS, and Citi must resolve any claims between

---

[14]A void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract transfers the deed to the assignee – including the rights contained in it – subject to the rights of the assignor to set it aside upon proof the contract was executed improperly. *Cf. Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942) (explaining concept of "void" versus "voidable" in contract of sale).

ORDER – PAGE 13

themselves). However, if the assignment were truly void and Citi had no rights under the deed whatsoever, Plaintiffs may be able to state a cause of action for trespass to try title and quiet title against Citi, as Citi would not have had standing to foreclose under the deed of trust and thus Citi could not claim ownership rights to the property pursuant to the foreclosure deed.[15] Because the Court cannot ascertain what Plaintiffs mean by their allegation that the "Deed of trust [was] not lawfully and timely . . . assigned to [Citi]," Pls.' Original Pet. 3,[16] the Court cannot determine that Plaintiffs have standing. Plaintiffs have therefore failed to plead sufficient facts to state a claim for relief under *Twombly* based on their contention that Citi did not have the right to foreclose due to faulty assignments.

### E. Plaintiffs' DCPA Claim Fails

---

[15]The Western District of Texas has reasoned that a plaintiff's claim regarding the assignment of his note and deed of trust does not fall into the exceptions allowing a plaintiff standing where "there is no suggestion [that plaintiff] is being put in a position where he will have to pay the same claim twice." *Kramer*, 2012 WL 3027990, at *5.

> Instead, it appears [plaintiff] was asked to live up to his loan obligations, and, upon failing to do so, suffered the consequences to which he agreed. The Court thus concludes that, if an error was indeed committed, and the wrong entity received the foreclosure sale proceeds, that is a matter properly resolved between the various parties who have a legitimate claim to the property; and that [plaintiff], whose legal interest in the property was forfeited when he defaulted on his loan obligations and failed to make timely cure, cannot challenge those transactions here.

*Id.* However, the court in *Kramer* went on to explain why plaintiffs claims assignment theory failed on the merits.

[16]Again, Plaintiffs do not allege that Everett or MERS never attempted to assign the note and deed to Citi or that Citi was a party unknown to them at the time it sought to foreclose – allegations which may alter the Court's reasoning. They instead allege that Citi did not have standing to foreclose because of defects with the assignment and transfer of the deed.

Plaintiffs allege that Citi's "acts, omissions, and conduct . . . constitute violations of the [DCPA] because prior to the purported Substitute Trustee's non-judicial foreclosure sale of the Property, [Citi] misrepresented the character, extent, or amount of a debt against a consumer." Pls.' Original Pet. 6. The Court notes first that attempted or actual foreclosure can violate DCPA. *See, e.g.*, *Rey v. Acosta*, 860 S.W.2d 654, 659 (Tex. App. – El Paso 1993, no writ) ("[W]rongful acceleration of a real estate note . . . violates [DCPA] . . . as a matter of law." (citation omitted)); *Swim*, 2012 WL 170758, at *5 (collecting cases); *Wilkerson v. Citimortg., Inc.*, 2011 WL 6937382, at *5-6 (N.D. Tex. 2011) (Toliver, Mag. J.); *Biggers v. BAC Home Loans Servicing, LP* ("*Biggers I*"), 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011) (Fitzwater, C.J.) ("Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that DCPA can apply to actions taken in foreclosing on real property."). However, Plaintiffs neither point to specific sections of DCPA that Citi has allegedly violated nor supply sufficient facts – other than their invalid assignment or "split" theories, which the Court discusses above – in support of their DCPA claim. Plaintiffs do provide an "alternative" pleading, alleging that they "entered into a trial modification of the Note, made payments pursuant to the trial modification agreement, but were denied the opportunity to enter into a permanent loan modification with respect to the note." Pls.' Original Pet. 4. But, without more, Plaintiffs fail to meet the standards for pleading under *Twombly*, and the Court dismisses their DCPA claim.

### *D. The Court Dismisses Plaintiffs' Declaratory Judgment Request and Request for Injunctive Relief*

Plaintiffs seek a declaratory judgment for all of their underlying claims, Pls.' Original Pet. 5-6,[17] and injunctive relief preventing Citi from "obtaining the issuance of service, or causing the issuing of service, of a Writ of Possession in the Forcible Detainer action," *id.* at 7-8. The Declaratory Judgment Act ("DJA")[18] is a procedural device; it creates no substantive rights and requires the existence of a justiciable controversy. *Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). "Thus, the Act provides no relief unless there is a justiciable controversy between the parties."[19] *Kazmi v. BAC Home Loans Servicing, L.P.*, 2012 WL 629440, at *15 (E.D. Tex. 2012); *Turner*, 2011 WL 3606688, at *5 (explaining that DJA does not create substantive cause of action; rather, it is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive

---

[17]Specifically, they request that the Court declare that: (1) the note and deed were not lawfully and timely indorsed, transferred from Everett to Citi; (2) Citi did not have standing or legal right to declare default, accelerate the note, appoint a substitute trustee, or request the substitute trustee to institute a nonjudicial foreclosure; (3) the nonjudicial foreclosure sale was invalid and the substitute trustee's deed to Citi is invalid; (4) the "split" of the note and deed caused the note to become unsecured, "the party holding the deed did not experience a default, and the security interests in the Property was forfeited;" and (5) Citi is neither the lawful owner of the property nor entitled to possession of it. Pls.' Original Pet. 5-6.

[18]Removal from state to federal court, in effect, converts a state court declaratory judgment action into one under the DJA. *See, e.g.*, *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5 n.11 (N.D. Tex. 2011) (Fitzwater, C.J.); *Morrice Logistics, Ltd. v. Intransit Inc.*, 2011 WL 1327397, at *4 n.1 (W.D. Tex. 2011); *i2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n. 5 (N.D. Tex. 2002) (Fish, C.J.) (collecting cases).

[19]The Texas Uniform Declaratory Judgment Act, under which Plaintiffs initially pled, is the same in this regard. *See, e.g.*, *Chambers Cty. v. TSP Dev., Ltd.*, 63 S.W.3d 835, 840 (Tex. App. – Hous. [14th Dist.] 2001, pet. denied).

law."); *see Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003).[20] Similarly, "[i]njunctive relief is an equitable remedy, not an independent cause of action." *Excel Mktg. Solutions, Inc. v. Direct Fin. Solutions, LLC*, 2011 WL 1833022, at *4 (N.D. Tex. 2011) (Fitzwater, C.J.) (citation omitted). Because the Court dismisses each of Plaintiffs' underlying claims for failure to state a claim, there is no actual controversy between the parties regarding these claims, and the Court refuses Plaintiffs' request that it issue a declaratory judgment or grant injunctive relief.[21] *See, e.g.*, *Olaoye*, 2012 WL 2012 WL 1082307, at *5 n.5.

## CONCLUSION

The Court dismisses Plaintiffs' claims for trespass to try title, quiet title, and violations of DCPA, and it denies Plaintiffs' request for declaratory relief.

However, the Court grants Plaintiffs leave to amend their complaint to address the deficiencies that the Court has identified in this Order. *See, e.g.*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (noting that Fifth Circuit precedent supports the premise that "granting leave to amend is especially appropriate" where district court dismisses plaintiff's complaint for failure to state a claim and explaining that "district courts often afford plaintiffs at least one opportunity to cure

---

[20]Federal Courts have broad discretion to grant or refuse a request for declaratory judgment. *Kazmi*, 2012 WL 629440, at *14 (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

[21]The Court has insufficient information about the state court's eviction proceeding in Citi's forcible detainer action to rule on Plaintiffs' request for an injunction preventing eviction *only if* the state court fails to abate Citi's proceedings. Pls.' Original Pet. 3. However, because the Court dismisses all of Plaintiffs underlying causes of action, Plaintiffs' request for injunctive relief as a remedy fails.

pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Garcia v. Bank of N.Y. Mellon*, 2012 WL 692099, at *4-5 (N.D. Tex. 2012) (Fitzwater, C.J.) (allowing plaintiffs to amend complaint in foreclosure action). Accordingly, Plaintiffs may file an amended complaint within twenty-eight (28) days of the date of this Order.

Signed August 29, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 18